UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| EASi, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 20-cv-1235-MMM-JEH |
| | ) |
| JALEER GAFFAR and L&T | ) |
| TECHNOLOGY SERVICES, LTD., | ) |
| | ) |
| Defendants. | ) |

# ORDER AND OPINION

This matter is now before the Court on Plaintiff's Motion (Doc. 2) for Temporary Restraining Order and Defendant's Response (Doc. 20) thereto. For the reasons set forth below, Plaintiff's Motion is GRANTED in part and DENIED in part.

## BACKGROUND

**The Parties**

*EASi*

EASi is a Maryland Limited Liability Company with its principal place of business in Hanover, MD. Doc. 1, at 3 (Complaint). EASi is an engineering, design, and process management services company with multiple offices, including an office in Peoria. EASi is a subsidiary of Aerotek, Incorporated, a staffing company which performs a variety of services for clients, including product development, research and development, CAD, CAE, and various other engineering services. Doc. 4, at 3 (Plf's Memo). EASi hires engineers to perform services for clients in contracts with. Those employees gain exposure to confidential information of EASi, including financial information, designs and engineering techniques, processes, systems,

1

software, databases, sales and marketing strategy, pricing and costs, client information, and management practices and procedures. *Id*.

*Jaleel Gaffar*

Defendant Gaffar is alleged to be a citizen of India residing in Peoria, Illinois. Doc. 1, at 3. Gaffar entered into an Employment Agreement with EAsi when he was hired. The agreement contains a non-compete covenant, confidentiality provision, and non-solicitation covenant. Doc. 1-1 (Employment Agreement). On May 18, 2019, Gaffar resigned from EASi to begin work at a competing company, Defendant L&T, in Peoria.

*L&T Technology Services, Ltd.*

Defendant L&T is alleged to be an Indian corporation with its principal place of business in India. L&T operates a business and employs several individuals in the Peoria, Illinois area. Doc. 1, at 3.

**The Agreement**

The Non-Solicitation Covenant covers both client-directed communication and solicitation and employee-directed solicitation for a period of 18 months after Gaffar's employment ends. Regarding client solicitation, the Agreement restricts Gaffar from working with or soliciting clients he worked directly with or obtained confidential information about while employed at EASi in a role competitive with the one Gaffar left at EASi. The Non-Solicitation Covenant pertaining to employee solicitation restricts the solicitation of EASi employees Gaffar "obtained knowledge or had contact" by reason of his employment with EASi for the purpose of leaving employment with EASi for a competitive business. The Non-Solicitation Covenant covers actions taken by Gaffar on behalf of his new employer, L&T.

Gaffar also explicitly agreed to both injunctive relief as well as liquidated damages should he breach the Agreement. The Agreement provides that it shall be governed by the laws of the State of Maryland. Doc. 1-1 (Employment Agreement).

**The Dispute**

On May 18, 2019, Gaffar resigned from EASi to begin work at a competing company, Defendant L&T, in Peoria. Upon his resignation, Gaffar was reminded of his covenants and obligations in the Agreement. Doc. 1-2 (Post-Termination Letter). EASi states it was initially unaware of Defendant Gaffar's employment with a competitor in violation of the non-compete agreement. EASi became aware of Gaffar's new employment through Caterpillar, the primary client Gaffar serviced during his employment with EASi. Caterpillar informed EASi Gaffar had begun working for L&T and meeting and working with the same Caterpillar managers he supported while employed at EASi. Doc. 4, at 5.

On June 26, 2019, EASi sent Gaffar a letter reminding him of his obligations contained in the Agreement. Doc. 1-3 (EASi Letter to Gaffar). Gaffar responded to EASi's Letter, assuring them he was aware of his obligations and would not violate them. Doc. 1-4 (Gaffar Response to EASi).

On July 22, 2019, EASi wrote to the CEO of L&T, informing them Gaffar was in breach of the Agreement. Doc. 1-5 (EASi Letter to L&T). L&T responded on August 1, 2019, denying Gaffar was in breach of the Agreement. Doc. 1-6 (L&T Response to EASi). After the letter to L&T, Gaffar called his former manager at EASi, Harish Satavalli, to attempt to convince EASi not to pursue claims against him. Gaffar expressed concern that L&T might not support him if EASi pursued to covenants in the Agreement. EASi "reluctantly" chose not to pursue the issue further at that time. Doc. 4, at 5.

EASi later learned Gaffar was not only in breach of the noncompete and non-solicitation agreements, but also the employee non-solicitation provision. Specifically, EASi alleges it has knowledge of five separate employees solicited directly or indirectly by Gaffar, with L&T's knowledge or support. Each of these employees is alleged to have had their own employment agreements with EASi with similar covenants. These individuals performed contract work for EASi and were placed to perform work at Caterpillar. L&T also places contract employees at Caterpillar, and these individuals began working for L&T immediately after resigning from EASi, performing substantially similar work for Caterpillar with the same manager that they worked with at EASi, now for the benefit of L&T. Doc. 4, at 5–6.

## LEGAL STANDARD

A temporary restraining order is an emergency remedy issued to maintain the status quo until a hearing can be held on an application for a preliminary injunction. *Coca–Cola Co. v. Alma–Leo U.S.A., Inc.*, 719 F. Supp. 725, 726 (N.D. Ill. 1989). The purpose of a TRO, similar to that of a preliminary injunction, is to minimize the hardship to the parties pending the ultimate resolution of the suit. *Faheem–El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). In this circuit, the standards for a TRO and a preliminary injunction are functionally identical. *Bernina of America, Inc. v. Fashion Fabrics International*, 2001 WL 128164, at * 1 (N.D. Ill. Feb. 9, 2001).

A temporary restraining order must (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required. Fed. R. Civ. P. 65(d).

Injunctive relief, including the entry of a TRO, is warranted if the movant can make a threshold showing: (1) that the movant has some likelihood of success on the merits of the underlying litigation; (2) that no adequate remedy at law exists; and (3) that the movant will

suffer irreparable harm if the injunction is not granted. If these three conditions are met, then the Court must balance the harm to the movant if the injunction is not issued against the harm to the defendant if it is issued improvidently and consider the interest of the public in whether the injunction is to be granted or denied. *Crue v. Aiken*, 137 F. Supp. 2d 1076, 1082–83 (C.D. Ill. 2001); *see also Duct–O–Wire Co. v. U.S. Crane, Inc.,* 31 F.3d 506, 509 (7th Cir. 1994), *Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 314–15 (7th Cir. 1994), *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 11–12 (7th Cir. 1992), *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006).

## DISCUSSION

The Court has reviewed the filings of the parties and considered the arguments presented to the Court at the July 9, 2020 hearing on Plaintiff's Motion for Temporary Restraining Order. During the pendency of Plaintiff's Motion for Temporary Restraining Order, the Court also granted Plaintiffs' request for expedited discovery and provided the parties with a discovery schedule specific to Plaintiff's request for a preliminary injunction and the anticipated hearing on that request. *See* July 8, 2020 Text Order.

At issue in this case are certain restrictive covenants entered into between EASi and Gaffar. Under Maryland law, four requirements must be met for a restrictive covenant to be enforceable: (1) the employer must have a legally protected interest, (2) the restrictive covenant must be no wider in scope and duration than is reasonably necessary to protect the employer's interest, (3) the covenant cannot impose an undue hardship on the employee, and (4) the covenant cannot violate public policy. *Holloway v. Faw, Casson & Co.*, 319 Md. 324, 572 A.2d 510, 515–16 (1990). The restrictive covenants at issue here restrict Gaffar from soliciting EASi's clients for 18 months after his employment with EASi ended. A similar restrictive covenant

prevents Gaffar from soliciting EASi employees Gaffar knew or worked with during his tenure at EASi.

With respect to this second covenant, Plaintiff is entitled to a temporary restraining order prohibiting Gaffar from soliciting any *further* EASi employees to work for a business competitive with EASi. This conclusion is based on the following: First, Plaintiff has shown some likelihood of success on the merits of this claim. Following the hearing, the Court believes Plaintiff has made a credible showing that Gaffar left EASi for L&T, but continued to work for CAT in substantially the same position with the same CAT employees. Soon after Gaffar's departure, a number of other EASi employees (the parties dispute how many) who were also staffed at CAT left EASi to work for L&T. At least some of these individuals continue to work for CAT in similar positions with many of the same CAT employees. Second, Plaintiff has made a sufficient showing that no adequate remedy at law exists and Plaintiff may suffer irreparable harm for the alleged poaching of these employees. If Gaffar or L&T continue to solicit and hire EASi employees during the pendency of this lawsuit, EASi risks losing significant work from CAT, a large client, and may be competitively disadvantaged on future projects because the former EASi employees likely take with them the customer goodwill they helped to create for the employer. *See Deutsche Post Glob. Mail, Ltd. v. Conrad*, 116 F. App'x 435, 438 (4th Cir. 2004) ("Employers have a legally protected interest in preventing departing employees from taking with them the customer goodwill they helped to create for the employer."). Finally, the balancing of harms favors the issuance of a TRO restraining Gaffar from further solicitation of EASi employees—permitting Gaffar to continue soliciting EASi employees risks substantial harm to EASi, but restraining Gaffar from further solicitation of EASi employees imposes no known harm to Gaffar or L&T. *See Duct–O–Wire Co. v. U.S. Crane, Inc.*, 31 F.3d 506, 509 (7th

Cir. 1994). Accordingly, the Court grants Plaintiff's Motion for Temporary Restraining Order insofar as Defendant Gaffar is temporarily restrained from soliciting employees from EASi to work with L&T or any other business competitive with EASi.

With respect to the first covenant, which restricts Gaffar from soliciting EASi's clients for 18 months after his employment with EASi ended, the Court finds a temporary restraining order is not appropriate on the current record. First, the parties take vastly different positions on multiple issues which are material to the resolution of this claim. For example, the parties are unable to agree whether Gaffar's position with EASi is the same or similar to his position with L&T. Likewise, the parties are unable to define with any precision what constitutes a "competitive business," what confidential information Gaffar had access to by reason of his employment with EASi, or whether that confidential information is being used by Gaffar at L&T.

Second, the language utilized by Plaintiff with respect to this covenant in its proposed temporary restraining order is ambiguous and confusing. Even if the Court were to grant this restraint, it is unlikely Gaffar would be capable of understanding what conduct the restraining order prohibits. Third, Plaintiff's delay in initiating this action is one factor for the Court to consider when analyzing whether an adequate remedy at law exits or whether Plaintiff will suffer irreparable harm. To be sure, counsel for EASi offered credible, practical reasons for why it waited before filing suit. And EASi may well have other, additional reasons justifying its delay that are not on the record at this time. However, although the Court affords this factor little weight at this time, it does weigh against the issuance of a restraining order.

Fourth, the balancing of harms favors denying temporary relief until a preliminary injunction hearing may be held on a more complete record. Specifically, if enforcement of the covenant were to cause Gaffar to lose his job with L&T, his H-1B visa status might be

jeopardized. As this Court lacks jurisdiction to stop or reverse agency actions in immigration matters, a wrongly issued restraining order would risk irreparable harm to Gaffar. On the other hand, given that EASi did not seek legal recourse or injunctive relief for nearly a year after Gaffar left EASi, allowing Gaffar to continue working for L&T at CAT until a preliminary injunction hearing may be held (about a month from now) poses a lesser harm to EASi that is more likely to be capable of a legal remedy.

Again, a temporary restraining order is an emergency remedy issued to maintain the status quo until a hearing can be held on an application for a preliminary injunction. *Coca–Cola Co. v. Alma–Leo U.S.A., Inc.*, 719 F. Supp. 725, 726 (N.D. Ill. 1989). Here, maintaining the status quo means allowing Gaffar to continue working at L&T in his current placement with CAT. It also means prohibiting Gaffar from soliciting any further employees from EASi. However, the remaining issues appear to be ill-suited for resolution in a TRO proceeding where the parties lack discovery and thus evidence. Particularly, the (a) nature of Gaffar's employment with EASi and L&T, (b) the information he obtained while at EASi, and whether that information is confidential, and (c) and the harm or damage to EASi, are all issues which the undersigned believes require a more developed record before the Court should decide whether injunctive relief is warranted. Accordingly, Plaintiff's Motion is granted in part and denied in part.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion (Doc. 2) for Temporary Restraining Order is GRANTED in part and DENIED in part, consistent with the attached Temporary Restraining Order.

Signed on this 9th day of July, 2020.

s/ James E. Shadid
James E. Shadid
United States District Judge
